UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
BONITO OLYMPIO, *individually and on behalf of all others similarly situated*,

                    Plaintiff,

      -against-                    **MEMORANDUM AND ORDER**
                                          25 CV 2630 (ENV)
BITFARMS LTD., L. GEOFFREY
MORPHY, BENJAMIN GAGNON, AND
JEFFREY LUCAS,

                    Defendants.
------------------------------------------------------------X
**POLLAK**, United States Magistrate Judge:

       On May 9, 2025, plaintiff Bonito Olympio ("Olympio" or "plaintiff") commenced this action individually and on behalf of others similarly situated against Bitfarms Ltd. ("Bitfarms"), L. Geoffrey Morphy, Benjamin Gagnon, and Jeffrey Lucas (collectively, "defendants"), alleging violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §§ 78(j)(b) and 78(t), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5.

       On July 22, 2025, plaintiffs Michael Pearl, Kazim Khan, and Michael Lawrence (collectively, the "Bitfarms Investor Group") and Zhao Jun and Gong Lanfang (collectively, "Jun and Langfang") filed a stipulation to appoint themselves as Co-Lead Plaintiffs and to approve their selection of Wolf Haldenstein Adler Freeman & Herz LLP and Pomerantz LLP as Co-Lead Counsel. For the reasons set forth below, the Court grants plaintiffs' motions.

FACTUAL BACKGROUND

Plaintiff alleges that defendant Bitfarms is a Canadian corporation located in Toronto, Ontario, whose stocks trade on NASDAQ under the ticker symbol "BITF." (Compl,[1] ¶ 16). Defendant Morphy is alleged to have been the company's Chief Executive Officer ("CEO") from prior to the start of the Class Period until July 2024. (Id. ¶ 17). Defendant Gagnon has served as CEO since July 2024 and defendant Lucas has served as the Company's Chief Financial Officer at all relevant times. (Id. ¶¶ 18-19).

In the Complaint filed on May 9, 2025, plaintiff alleges that Bitfarms operates integrated Bitcoin data centers in Canada, the United States, Paraguay, and Argentina, with computers designed to validate transactions on the Bitcoin Blockchain. (Id. ¶ 2). Upon "mining" the bitcoin, defendants either exchange them for U.S. dollars or keep them as digital assets for later sale. (Id.) According to the Complaint, defendant is required to account for the proceeds that it receives on its cash flow statement. (Id. ¶ 3).

In March 2024, the Company identified a material weakness in its internal control over financial reporting with respect to certain warrants it had issued in 2021 (the "2021 Warrants"). (Id. ¶¶ 4, 5). Plaintiff alleges that throughout the Class Period, defendants made materially false and misleading statements regarding the Company's business, its prospects, and its operations by failing to disclose that it maintained deficient internal controls over financial reporting, incorrectly categorizing proceeds from the sale of digital assets, and overstating the extent to which it remediated the weakness related to the classification of the 2021 Warrants, causing misstatements in Company financial statements and resulting in the Company's public statements being materially false and misleading. (Id. ¶ 6). Following the issuance of a press

---

[1] Citations to "Compl." refer to plaintiff's Complaint, dated January 8, 2019, ECF No. 1.

2

release on December 9, 2024, indicating a material error in the Company's financial statements for the fiscal years 2022 and 2023, the stock price of Bitfarms fell 6.07%, resulting in injury to the plaintiff and the Class. (Id. ¶¶ 7-10).

Plaintiff alleges violations of Section 10(b) of the Exchange Act and Securities and Exchange Commission Rule 10b-5 against all defendants (Count I); and violations of Section 20(a) of the Exchange Act against the individual defendants (Count II).

## DISCUSSION

1. Legal Standard

Congress enacted the PSLRA to "'increase the likelihood that parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders, will participate in the litigation and exercise control over the selection and actions of plaintiff's counsel.'" Vladimir v. Bioenvision, Inc., No. 07 CV 6416, 2007 WL 4526532, at *3 (S.D.N.Y. Dec. 21, 2007) (quoting In re Bausch & Lomb Inc. Sec. Litig., 244 F.R.D. 169, 171 (W.D.N.Y. 2007), opinion modified on denial of reconsideration, No. 06 CV 6294, 2007 WL 3197318 (W.D.N.Y. Oct. 26, 2007)).  Consequently, the PSLRA amended the Exchange Act by setting forth new procedures that govern securities class actions. Weltz v. Lee, 199 F.R.D. 129, 131 (S.D.N.Y. 2001).

The PSLRA provides that, within 20 days of the filing of the complaint, the plaintiff must issue a notice "in a widely circulated national business-oriented publication or wire service" advising members of the proposed class "of the pendency of the action, the claims asserted therein, and the purported class period." 15 U.S.C. § 78u-4(a)(3)(A)(i).  The notice must also inform members of the class that they may file a motion to serve as lead plaintiff no later than 60

days after the date on which the notice is published.  Id.

The PSLRA also governs the appointment of lead plaintiff and lead counsel.  15 U.S.C. § 78u-4(a)(3)(B).  It provides that "the court . . . shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members (hereafter in this paragraph referred to as the 'most adequate plaintiff') . . .."  15 U.S.C. § 78u-4(a)(3)(B)(i); see also Schulman v. Lumenis, Ltd., Nos. 02 CV 1989, 2003 WL 21415287, at *3 (S.D.N.Y. June 18, 2003).

The PSLRA creates a rebuttable presumption that the "most adequate plaintiff" is the individual who:  "(aa) has either filed the complaint or made a motion in response to a notice . . .; (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); see also Schulman v. Lumenis, Ltd., 2003 WL 2145287, at *3.  This presumption may be rebutted only if a member of the class presents evidence that the plaintiff:  "(aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); see also Schulman v. Lumenis, Ltd., 2003 WL 2145287, at *3.

The only Rule 23 requirements that must be met for the purpose of appointing a lead plaintiff in PSLRA cases are typicality and adequacy.  Reitan v. China Mobile Games & Ent. Grp., Ltd., 68 F. Supp. 3d 390, 395 (S.D.N.Y. 2014).  In a motion such as this, the plaintiff "need only make a preliminary showing" that the adequacy and typicality requirements have been met.  Schulman v. Lumenis, Ltd., 2003 WL 21415287, at *5 (noting that "[a]ny preliminary class certification findings of adequacy and typicality made at this time, do not preclude any party

4

from contesting the ultimate class certification") (citation omitted).

Finally, with respect to the selection of the lead counsel, the PSLRA provides that "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class."  15 U.S.C. § 78u-4(a)(3)(B)(v).

2. Analysis

   a. Timing Requirements of the PSLRA

On May 9, 2025, notice of the Class Action was filed in GlobeNewswire.  (ECF No. 13-6).  On July 8, 2025, sixty days after the notice was filed, plaintiffs Cobb, Keller, the Bitfarms Investor Group, and Jun and Lanfang each filed separate, respective Motions for Appointment of Lead Plaintiff and Approval of Selection of Counsel.  (ECF Nos. 13, 14, 19, 20).  Plaintiffs Cobb and Keller withdrew their motions on July 22, 2025.  (ECF Nos. 20, 21, 22).  Also on July 22, 2025, plaintiffs Bitfarms Investor Group and Jun and Lanfang filed a joint stipulation asking to be jointly appointed as Co-Lead Plaintiffs and asking for approval of their Co-Lead Counsel.  (ECF No. 22).

The notice requirements of the PSLRA are satisfied.  First, this Court has found GlobeNewswire to be a suitable publication for notice.  See Xiangdong Chen v. X Fin., No. 19 CV 6908, 2020 WL 2478643, at *2 (E.D.N.Y. May 13, 2020); Burns v. FalconStor Software, Inc., 10 CV 4572, 2013 WL 12432583, at *10 (E.D.N.Y. Oct. 9, 2013) (Pollak, J.) (finding GlobeNewswire "is practical and likely effective in reaching the affected individuals"). Moreover, within sixty days "after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class."  15 U.S.C. § 78u-4(a)(3)(A)(i)(II).  Notice was published on May 9, 2025.  Given that plaintiffs Bitfarms Investor Group and Jun and Lanfang filed their motions on July 8, 2025, sixty days after the

5

notice, the motions are timely.  See Ibew Loc. 90 Pension Fund v. Deutsche Bank AG, No. 11 CV 4209, 2011 WL 6057812, at *1 n.1 (S.D.N.Y. Dec. 5, 2011).

      b. Financial Interest

As stated above, plaintiff must demonstrate that he/she has the largest financial interest in order to be deemed the most adequate plaintiff to be appointed Lead Plaintiff.  Supra at 4.  Although the PSLRA does not define the term "largest financial interest," courts in this Circuit consider the following factors:  "(1) the total number of shares purchased (or sold) during the class period; (2) the number of net shares purchased (or sold) during the class period (*i.e.*, the difference between the number of shares purchased (or sold) and the number of shares sold (or purchased)); (3) the total net funds expended during the class period (i.e., the difference between the amount spent to purchase shares and the amount received for the sale of shares during the class period); and (4) the approximate loss suffered during the class period."  Vladimir v. Bioenvision, Inc., 2007 WL 4526532, at *4 (collecting cases).  Courts have found the fourth factor – amount of loss – is the most important factor.  See id.

In this case, the Bitfarms Investor Group provided their limited loss chart, indicating that they lost $225,469.04.  (BIG Mot.[1] at 6; Kaufman Decl.,[2] Ex. B).  Co-Plaintiffs Jun and Lanfang also have provided evidence of their losses as a result of the alleged fraud, totaling $156,669.  (J&L Mot.,[3] Ex.A).  When combined with the losses of the Bitfarms Investor Group, the losses

---

[1] Citations to "BIG Mot." refer to the Memorandum of Law in Support of Bitfarms Investor Group's Motion For Appointment As Lead Plaintiffs and Approval of Selection of Counsel, filed July 8, 2024 (ECF No. 15).

[2] Citations to "Kaufman Decl." refer to the Declaration of Benjamin Y. Kaufman, dated July 8, 2025 (ECF No. 16).

[3] Citations to "J&L Mot." refer to the Memorandum of Law in Support of Motion of Zhao Jun and Gong Lanfang For Appointment as Co-Lead Plaintiffs and Approval of Lead Counsel, filed July 8, 2025 (ECF No. 19-2).

6

of these plaintiffs together suggest that they possess the largest financial interest in the outcome of the litigation and are presumptively the "most adequate" plaintiffs. Therefore, these plaintiffs have satisfied this requirement.

    c. Typicality

Here, the combined set of plaintiffs have sufficiently demonstrated that they satisfy the other three elements of the test. A plaintiff's claims are typical of those of the proposed class when they arise "'from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'" Reitan v. China Mobile Games & Ent. Grp., Ltd., 68 F. Supp. 3d at 400 (quoting Canson v. WebMD Health Corp., No. 11 CV 5382, 2011 WL 5331712, at *4 (S.D.N.Y. Nov. 7, 2011)). The lead plaintiff's claims do not have to be identical to the claims of the proposed class. Id.

Here, the claims of the Bitfarms Investors Group and Jin and Lanfang are based on the legal theory that defendants violated the Exchange Act by making false or misleading statements of material fact, the same theory alleged on behalf of the members of the class. (BIG Mot. at 8; J&L Mot. at 9). Moreover, plaintiffs' claims arise from the same events and course of conduct in that defendants provided false and misleading statements about the company's financial condition, causing Bitfarms' share price to fall. (Id.) Thus, they have satisfied the typicality requirement.

    d. Adequacy

The adequacy requirement of Rule 23 turns on "(1) whether class counsel is qualified, experienced, and generally able to conduct the litigation; (2) whether the proposed lead plaintiff[s] ha[ve] interests that are antagonistic to other class members; and (3) whether the proposed lead plaintiff[s] ha[ve] sufficient interest to pursue vigorous prosecution of their

claims." Rauch v. Vale S.A., 378 F. Supp. 3d 198, 21011 (E.D.N.Y. 2019) (quotation omitted).

Here, the Bitfarms Investors Group and Jun and Lanfang have a significant interest in the outcome of the litigation given the financial losses they suffered. Moreover, plaintiffs are unaware of any conflict between their claims and those of the class. (BIG Mot. at 7; J&L Mot. at 10; Hood Decl.,[4] Ex. C). Thus, they have made a preliminary showing that they are adequate representatives of the Class.

With respect to counsel, the firm of Wolf Haldenstein Adler Freeman & Herz LLP has been selected by the Bitfarms Investor Group to act as Lead Counsel and they have submitted biographies of their attorneys and highlighted recent accomplishments of the firm, detailing its work on securities cases in this Circuit and around the country. (BIG Mot. at 9; Kaufman Decl. Ex. E). The Pomerantz LLP firm, retained by Jun and Lanfang, has also submitted biographies of its attorneys and accomplishments of the firm relating to securities cases. (J&L Mot. at 12 – 13 & Ex. E). Based on the legal experience of the attorneys, particularly their extensive experience in similar cases, the Court concludes that the adequacy requirement has been met.

e. The Presumption Has Not Been Rebutted

In this case, the plaintiffs have submitted declarations stating that they are willing to serve as representatives in this matter, and they agree not to accept any payment for serving as a representative beyond each plaintiffs' pro rata share of any recovery. (BIG Jt. Decl.[5] ¶¶ 10-12; J&L Jt. Decl.[6] ¶¶ 7-10). Moreover, no opposition has been filed to the motions. Therefore, the

---

[4] Citations to "Hood Decl." refer to the Declaration of J. Alexander Hood in Support of Motion of Zhao Jun and Gong Lanfang For Appointment As Co-Lead Plaintiffs and Approval of Lead Counsel, filed July 8, 2025 (ECF No. 19-3).

[5] Citations to "BIG Jt. Decl." refer to the Joint Declaration in Support of the Motion of the Bitfarms Investor Group For Appointment As Lead Plaintiffs, filed July 8, 2025 (ECF No. 16-4).

[6] Citations to "J&L Jt. Decl." refer to the Joint Declaration of Jun and Lanfang in Support of Lead Plaintiff Motion, sworn to July 7, 2025 (ECF No. 19-7). It appears from the Joint

Court finds that the Bitfarms Investors Group and Jun and Lanfang are presumptively the most adequate plaintiffs, and the presumption in favor of appointing them has not been rebutted. The Court therefore appoints them to serve as Co-Lead Plaintiffs.

      f.   <u>Appointment of Lead Counsel</u>

Plaintiffs have also moved for the approval of the Wolf Haldenstein firm and the Pomerantz firm to serve as Co-Lead Counsel. The PSLRA evidences a strong presumption in favor of approving a properly selected lead plaintiff's decisions as to counsel selection and counsel retention. <u>Cullinan v. Cemtrex, Inc.</u>, 287 F. Supp. 3d 277, 289 (E.D.N.Y. 2018) (quotation marks omitted). Judges in this District have held that "[t]he PSLRA provides no further instruction regarding the approval of lead counsel." <u>Id.</u> at 290. Instead, "[c]ourts have correctly found that the PSLRA evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention." <u>Id.</u>

The Court has reviewed the biographies of the attorneys at the two firms and surveyed their work in securities cases and finds that they are qualified, experienced, and generally able to conduct this litigation. <u>See</u> <u>In re Blue Apron Holdings, Inc. Sec. Litig.</u>, 17 CV 4846, 2017 WL 6403513, at *4 (E.D.N.Y. Dec. 15, 2017) (approving the selection of Lead Counsel that is "qualified, experienced, and generally able to conduct the litigation.") (quotation omitted). Thus, the Court grants plaintiff's motion to appoint the Wolf Haldenstein firm and the Pomerantz firm to serve as Co-Lead Counsel.

---

Declaration that Jun and Lanfang are husband and wife. (<u>Id.</u> 2).

CONCLUSION

In light of the foregoing, the Court grants the parties' request and So Orders the Stipulation submitted on July 22, 2025.

The Clerk is directed to send copies of this Order to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
August 19, 2025

/s/ Cheryl L. Pollak
Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York